

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL IVERSON,

    Plaintiff,

-v-

ANTHONY ANNUCCI, et al.,

    Defendants.

PS

18-CV-0886-LJV
ORDER

## INTRODUCTION

The *pro se* plaintiff, Michael Iverson, was a prisoner confined at the Orleans Correctional Facility ("Orleans") when he filed this action. He asserts claims under 42 U.S.C. § 1983 and alleges that he was deprived of his Fourth and Fourteenth Amendment rights when the defendants arrested and detained him for violating certain conditions of his parole. Docket Item 1. He also has moved to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it). Docket Item 2. And he has moved for a preliminary injunction and a temporary restraining order. Docket Item 3.

Because Iverson meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, Docket Items 2, this Court grants his motion to proceed *in forma pauperis*. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court screens the complaint. For the reasons that follow, Iverson's motion for a preliminary injunction and a temporary restraining order is denied, two of his claims may proceed, but the remaining claim will be dismissed under sections 1915(e)(2)(B) and 1915A unless he files an amended complaint correcting the deficiencies noted below.

1

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation omitted). But leave to amend pleadings may be denied when any amendment would be "futile." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also id.* ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))).

## I. SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551

2

U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

Here, a liberal reading of the complaint tells the following story. On March 15, 2013, a New York State Department of Corrections and Community Supervision ("DOCCS") parole officer issued a warrant for Iverson's arrest based on an alleged parole violation ("DOCCS warrant"). Docket Item 1 at 5, 38. DOCCS officials later learned that Iverson was in Guadalupe County, Texas. *Id.* at 5. On January 3, 2016, the "Guadalupe County Sheriff's Department swore out a complaint at DOCCS['s] behest solely upon DOCCS['s] accusation that [Iverson] was an alleged parole violator." *Id.* That same day, in Shertz, Texas, Iverson was "arrested and retaken into DOCCS custody by Texas authorities acting at DOCCS['s] behest." *Id.* at 5-6. On January 4, 2016, Iverson was arraigned at the Guadalupe County Jail and denied bail. *Id.* at 6.

On January 7, 2016, Iverson executed a waiver of extradition in the Guadalupe County District Court. *Id.* at 7. The waiver stated that Iverson

> knowingly and voluntarily, and without promise of reward or leniency, . . . waive[d] the issuance and service of the governor's extradition warrant and other legal documents and procedures which otherwise would be required

3

to secure [his] return to the demanding state, and that [he] knowingly and voluntarily consent[ed] to [his] return to that state.

*Id.* at 48. So Iverson apparently was ready to return to New York in connection with his alleged parole violation.

The following day, however, Iverson was "arrested by the U.S. Marshalls [*sic*] Service [for violating] 18 U.S.C. § 2250(a)," failure to register as a sex offender. *Id.* at 7. Iverson subsequently was held in the Guadalupe County Jail for eight months before being sentenced in the United States District Court for the Western District of Texas on August 18, 2016,[1] to 37 months of imprisonment and five years of supervised release. *Id.* at 9-10, 50. On August 22, 2016, Iverson was "taken into the United States Marshalls [*sic*] [c]ustody and turned over [to] the Bureau of Prisons [c]ustody." *Id.* at 10.

Iverson alleges that his eight-month detention at Guadalupe County Jail was based solely on the DOCCS warrant—not the pending federal charges. *Id.* at 10, 12-13. And he claims that this detention violated his due process rights because, under New York law, he should have been informed of the basis of his arrest, given a preliminary hearing within 15 days of his arrest, and given a revocation hearing within 90 days of his arrest. *Id.* at 7-9, 11-17. As a result, Iverson argues, the DOCCS warrant become "void" on April 2, 2016, at the latest, thereby "reinstating [his] original maximum [sentence] expiration date of January 15, 2015." *Id.* at 16. Iverson therefore argues that he was detained in the Guadalupe County Jail at DOCCS's behest "past his New York State [p]rison [s]entence's maximum expiration date" in violation of his constitutional rights. *Id.*

---

[1] The date of Iverson's conviction under 18 U.S.C. § 2250(a) is not clear from the complaint.

4

Iverson also claims that he erroneously and unconstitutionally was denied certain opportunities while incarcerated on the basis of the "void" DOCCS warrant. *See id.* at 17-22. Specifically, Iverson learned on February 14, 2018, that he was ineligible for release to a halfway house because on July 24, 2017, Jean Tabor, a DOCCS Parole Officer, and Patrick O'Connor, a Senior DOCCS Parole Officer, had lodged a detainer with the Marion Penitentiary, where Iverson was serving his federal failure-to-register sentence. *Id.* at 17-18, 58. Iverson filed various grievances and wrote to several DOCCS officials arguing that the detainer should be lifted because, for the reasons detailed above, it was "void." *Id.* at 18-22. On April 9, 2018, Iverson received a response letter from Dawn Anderson, Bureau Chief of the DOCCS Niagara Frontier Regional Area Office, stating:

> As you are currently incarcerated for another conviction, with a projected release date of 9/9/18, we cannot proceed with the New York State Violation of Release Hearing process until you are available to our warrant only. Upon release from the Federal Penitentiary, you will be returned to New York State for proceedings.

*Id.* at 59. On May 29, 2018, Iverson also received a response letter from Ana Enright, Acting Deputy Commissioner of DOCCS. Enright wrote that Anthony Annucci, Acting Commissioner of DOCCS, "ha[d] asked her to respond to [Iverson's] letter . . . [raising] concerns regarding [the DOCCS warrant]." *Id.* Enright informed Iverson that "until [he was] available to [the DOCCS warrant, DOCCS] can't proceed with New York State violation proceedings." *Id.* at 68.

Iverson names Tabor, O'Connor, Anderson, Enright, and Annucci as defendants. He alleges that they violated his Fourteenth Amendment right to due process of law, falsely imprisoned him in violation of the Fourth Amendment, and maliciously

5

prosecuted him in violation of the Fourteenth Amendment. He seeks compensatory and punitive damages. *Id.* at 32.

Iverson also has moved for a preliminary injunction and a temporary restraining order. Docket Item 3. He seeks to enjoin DOCCS from "carrying out an illegal and unlawful policy of detention by continuing to detain parolee[s] after a parole warrant has become void as a matter of clearly established law." *Id.* at 9.

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.   Official Capacity Claims

Iverson includes a "*Monell* claim" in his complaint against "DOCCS Officials" for having "an unlawful policy or custom of holding parole warrants in abeyance." Docket Item 1 at 22. He seeks monetary, declaratory, and injunctive relief. *Id.* at 31-32. Because *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), applies only to municipalities, this Court liberally construes these allegations as suing the named DOCCS supervisory-official defendants in their official capacities.

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception [for prospective injunctive relief]." *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019); *see also Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." (quoting *Green v. Mansour,* 474 U.S. 64, 68 (1985) (citing *Ex Parte Young,* 209 U.S. 123, 155-56 (1908))). "The line between prospective and retrospective relief is drawn because '[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law,' whereas 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *Ward*, 207 F.3d at 119 (alteration in original) (quoting *Green*, 474 U.S. at 64). For that same reason, "'[a] declaratory judgment is not available when the result would be a partial end run around' the Eleventh Amendment's bar on retrospective awards of monetary relief." *Id.* at 120 (quoting *Green*, 474 U.S. at 72).

The Eleventh Amendment does not, however, bar suits for money damages against state officials in their individual capacities. But to establish liability against a supervisory official under section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a "link[ ] in the . . . chain of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (explaining that the theory of

7

respondeat superior is not available in a section 1983 action). A plaintiff can state a valid section 1983 claim against a supervisory official by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) *the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom*, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873 (emphasis added) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

"New York has not waived its immunity, nor has Congress abrogated it." *Li v. Lorenzo*, 712 F. App'x 21 (2d Cir. 2017) (summary order) (citing Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990)). Iverson's claims for money damages against the defendants in their official capacities therefore are dismissed with prejudice because any attempt to amend would be "futile." See Cuoco, 222 F.3d at 112.

Similarly, Iverson's claim for declaratory relief—specifically, a "declaration that the acts and omissions described [in the complaint] violate[d] [Iverson's] rights"—is denied because "the result would be a partial end run around' the Eleventh Amendment's bar on retrospective awards of monetary relief," *Ward*, 207 F.3d 120 (quoting *Green*, 474 U.S. at 72).

Iverson's claims against DOCCS employees in their official capacities for prospective injunctive relief, however, are not barred by the Eleventh Amendment. Nor are his claims against the employees in their individual capacities. But as explained

below, only two of those claims may proceed as pleaded, while the remaining claim must be amended before it may proceed.

## B.     Fourteenth Amendment Due Process Claims

Iverson alleges that the defendants violated his due process rights by not holding a preliminary parole violation hearing within 15 days of his arrest on the DOCCS warrant and a final revocation hearing within 90 days of his arrest on the DOCCS warrant. Docket Item 1 at 11-13. He further alleges that the DOCCS warrant thereby "bec[a]me void," Docket Item 1 at 27, such that his eight-month incarceration, allegedly under that warrant alone, was unconstitutional.

It is well settled that "the constitutional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards." *Moody v. Daggett*, 429 U.S. 78, 85-86 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). Among the due process rights afforded a parolee is "the right to a hearing at which the court determines two issues: whether the [parolee] violated a condition of [parole] as a matter of fact and, if so, whether this fact warrants revocation." *United States v. Jetter*, 577 F. App'x 5, 7 (2d Cir. 2014) (summary order) (alterations in original) (quoting *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000)). Such a hearing must take place "within a reasonable time after [the person] is taken into custody." *Morrissey*, 408 U.S. at 488.

"[A] parolee detained in New York for allegedly violating parole is entitled to a preliminary hearing within 15 days of the execution of the parole warrant and to a final revocation hearing within 90 days of the preliminary hearing." *People ex rel. Harris v.*

9

*Sullivan*, 74 N.Y.2d 305, 308 (1989) (citing N.Y. Exec. Law §§ 259-i(3)(c)(i) and 259-i(3)(f)(i)). "A parolee convicted of committing a new crime while on parole and sentenced to a new definite term, however, need only receive a final revocation hearing." *Id.* (citing N.Y. Executive Law § 259-i(3)(d)). "Failure to conduct a timely preliminary revocation hearing violates the parolee's right to due process unless the [New York State Division of Parole] is able to establish that it could not conduct a hearing because the parolee was beyond its convenience and practical control." *People ex rel. Matthews v. New York State Div. of Parole*, 95 N.Y.2d 640, 643 (2001) (citations omitted).

To the extent Iverson claims that the defendants erred procedurally—either directly or through their unlawful "policy or custom," *Colon*, 58 F.3d at 873—by not holding a timely revocation violation to justify his detention from the time of his arrest under the DOCCS warrant until the time of his conviction under federal law,[2] the claim may proceed. Iverson has plausibly alleged that he remained *solely* in New York custody under the DOCCS warrant after both the 15-day preliminary hearing and the

---

[2] To the extent Iverson claims that the defendants erred substantively in revoking his parole and ordering him reincarcerated, any such claim would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Supreme Court has made clear that there is no cause of action under section 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Heck*, 512 US at 484. "A parolee challenging a parole revocation [under section 1983] must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 455 (E.D.N.Y. 2018) (citing *Heck*, 512 U.S. at 486-87). In other words, Iverson may seek redress under section 1983 for the period of incarceration between his arrest under the DOCCS warrant and his (a) transfer to federal custody or (b) federal conviction triggering revocation of his state parole. He may not seek redress for the period of incarceration *following* his parole revocation.

10

90-day revocation hearing periods had lapsed. Even assuming that the constitutional limit on holding a revocation hearing is greater than New York State's 90 days, Iverson's allegation that he was held for eight months without a hearing plausibly states a claim that he did not receive a hearing "within a reasonable time after [he was] taken into custody." See Morrissey, 408 U.S. at 488.

To be sure, Iverson alleges that on January 8, 2016, he was "arrested by the U.S. Marshalls [sic] Service under 18 U.S.C. § 2250(a)"—a separate charge—and that he subsequently was convicted of, and sentenced to 37 months of imprisonment on, that separate charge. Id. at 7. But the mere prosecution of a federal crime does not automatically transfer an inmate into federal custody. See In re Liberatore, 574 F.2d 78, 89 (2d Cir. 1978) ("[T]he sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him, and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty." (citations omitted)). And Iverson alleges that he was being held in state—not federal—custody.

At this early stage, the Court will permit Iverson's claim to proceed. DOCCS may, of course, furnish evidence disputing Iverson's allegation that he remained in New York custody—that is, that he was detained only under the DOCCS warrant—after his federal arrest, or that he did not knowingly and voluntarily waive his rights to a revocation hearing. See, e.g., id. ("[P]ursuant to a writ of *habeas corpus ad prosequendum* or . . . a writ of *habeas corpus ad testificandum*[,] . . . the first sovereignty can . . . 'lend' its prisoner to the second sovereignty for trial on charges

pending against him there or in order to have him testify in the courts of the second sovereignty." (footnote omitted)); *People ex. rel. Smith v. N.Y.S. Bd. of Parole*, 517 N.Y.S.2d 145, 147 (1987) (explaining that the ninety-day statutory period to hold a final parole revocation hearing may be extended when the petitioner "causes or consents to delay or precludes the prompt conduct of such proceedings" (citing N.Y. Exec. Law § 259-i(3)(f)(i))); *see also* 28 C.F.R. § 2.49(f) ("[I]f a parolee requests and receives any postponement or consents to a postponed revocation proceeding[,] . . . the above-stated time limits may be extended."). But at this point, accepting, as it must, Iverson's allegations as true, the Court will allow his due process claims to proceed.

### C.  Fourth Amendment False Imprisonment and Fourteenth Amendment Malicious Prosecution Claims

Iverson also alleges that the defendants are liable under section 1983 for false imprisonment and that defendants O'Connor and Tabor are liable for malicious prosecution. *See* Docket Item 1 at 27-31. He argues that "even though his initial confinement was valid on January 3, 2016," he was "unreasonably detained, under the guise of a valid parole warrant, which has become void," Docket Item 1 at 27, and that "DOCCS plans to unlawfully extradite and maliciously prosecute [him] under a parole warrant which is void," *id.* at 31.

A section 1983 claim for false imprisonment is anchored in the Fourth Amendment right "to be free from unreasonable seizures." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). "[Courts] look to . . . state law principles to determine the validity of [a plaintiff's] federal civil rights claim based on false imprisonment." *Id.* at 204. "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the

12

confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). Iverson has alleged all of these elements, including that the confinement was not otherwise privileged because the DOCCS warrant was invalid. His claim for false imprisonment therefore may proceed.

"Section 1983 liability [also] may . . . be anchored in a claim for malicious prosecution, as this tort 'typically implicates constitutional rights secured by the [F]ourteenth [A]mendment, such as deprivation of liberty.'" *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (quoting *Easton v. Sundram*, 947 F.2d 1011, 1017 (2d Cir.1991)). "[Alt]hough section 1983 provides the federal claim, [courts] borrow the elements of the underlying malicious prosecution tort from state law." *Id.* Under New York law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its *termination favorably to plaintiff*, (3) lack of probable cause, and (4) malice." *Colon*, 60 N.Y.2d at 82 (emphasis added)). Iverson has not adequately stated a claim for malicious prosecution because he has not alleged that the proceedings—here, the parole violation charge—terminated in his favor. Nevertheless, and in light of his *pro se* status, Iverson may amend his malicious prosecution claim to include factual allegations showing that his parole revocation has since been found invalid.

### D.    Motion for Preliminary Injunction and Temporary Restraining Order

Finally, Iverson has asked this Court to grant a preliminary injunction and a temporary restraining order. Docket Item 3. He seeks to enjoin the defendants from

> (1) holding parole warrant[s] in abeyance while a parolee is in custody under the basis of a parole warrant; (2) extending [a] parolee's maximum term[ ]

13

of imprisonment under the basis of parole warrant[s] without affording the [p]arolee with a due process hearing; (3) . . . unlawfully detaining parolee[s] under the basis of parole warrant[s] which have become void, due to New York State parole authorities['] failure to effectuate the required procedural safeguards; (4) . . . scheduling and holding preliminary parole revocation hearing[s] more than (15) days from the date of the execution of a parole warrant, in clear violation of Executive Law § 259-i(3)(c)(iv); (5) [and] . . . extradit[ing Iverson] under the basis of [the DOCCS warrant].

*Id.* at 1.

"A party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'" *N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir. 1995) (quoting *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991)).

At this early stage, Iverson has not demonstrated that he is likely to succeed on the merits of his claims. The Court therefore denies his motion for a preliminary injunction and a temporary restraining order.

## CONCLUSION

Because Iverson meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, his request to proceed *in forma pauperis* is granted. But his claim for malicious prosecution will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint **within 45 days of the date of this order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Iverson's due process and false imprisonment claims, however, may proceed.

14

Iverson is advised that an amended complaint is intended to **completely replace** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

## ORDER

In light of the above,

IT IS HEREBY ORDERED that Iverson's request to proceed *in forma pauperis*, Docket Item 2, is GRANTED; and it is further

ORDERED that Iverson's motion for a preliminary injunction and a temporary restraining order, Docket Item 3, is DENIED; and it is further

ORDERED that Iverson may amend his claim for malicious prosecution **within 45 days of the date of this order**; and it is further

ORDERED that the Clerk of Court shall send to Iverson with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Iverson does not file an amended complaint **within 45 days of the date of this order**, the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, complaint, and this order upon defendants Tabor, O'Connor, Anderson, Enright, and Annucci, without the plaintiff's payment

therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED the Clerk of Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and it is further

ORDERED that, under 42 U.S.C. § 1997e(g), the defendants shall answer the complaint; and it is further

ORDERED that Iverson shall notify the Court in writing if his address changes. The Court may dismiss the action if Iverson fails to do so.

SO ORDERED.

Dated:   February 28, 2020
         Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE